UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBRA COOPER, as Personal Representative of the Estate of Christopher Beaty,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF INDIANAPOLIS, JOE HOGSETT, in his individual and official capacity, INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT, and RANDAL TAYLOR, Chief, in his individual and official capacity,<br><br>Defendants. | Case No. 1:22-cv-00917-TWP-KMB |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants, City of Indianapolis (the "City"), Joe Hogsett, in his individual and official capacity as Mayor of the City, the Indianapolis Metropolitan Police Department ("IMPD"), and Randal Taylor, in his individual and official capacity as the Chief of the IMPD (collectively, the "Defendants") (Filing No. 14). Plaintiff Debra Cooper, as personal representative[1] of the Estate of Christopher Beaty ("Beaty") ("the Estate"), initiated this action under Indiana's wrongful death statute, Indiana Code § 34–23–1–1, and the Civil Rights Act, 42 U.S.C. § 1983, alleging the Defendants violated the due process clause of the Fourteenth Amendment to the United States Constitution (Filing No. 1). For the reasons stated below, the dismissal is warranted and the Motion is **granted**.

---

[1] Debra Cooper, Beaty's mother, was appointed as the personal representative of his estate by the Marion Superior Court (Filing No. 1 at ¶ 10). *See* Cause No. 49D08-2202-EU-005535 and styled *In Re: the Estate of Christopher Beaty*.

## I.     FACTUAL BACKGROUND

Because the Defendants moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### A.     The Summer of 2020

Like many major American cities, Indianapolis, Indiana was embroiled in disruptive protests during the weekend of May 29–31, 2020, in the wake of the murder of George Floyd by a police officer, as well as the local police action shooting of a young Black man. On May 29, 2020, a small group of protestors gathered in downtown Indianapolis, initially congregating near Monument Circle to protest what they perceived as police misconduct against people of color. ([Filing No. 1 at ¶ 18](#)). In response, IMPD deployed its Emergency Response Group to the downtown area to handle crowd control. *Id*. at ¶ 20. Some officers were wearing riot gear. *Id*. at ¶ 22. Later that day, as tension grew between protestors and IMPD, CS gas and pepper balls were deployed to diffuse the situation and disperse the crowd. *Id*. at ¶¶ 21-25.

### B.     The May 30, 2020 Incident

The next day, May 30, 2020, protest continued in the downtown area but was punctuated by increased violence and disorder during the evening and overnight hours. *Id*. at ¶¶ 26–31. IMPD would again have to disperse the crowd, which caused the violence to spread throughout the downtown area rather than be centralized at Monument Circle. *Id*. at ¶ 30. Beaty resided in downtown Indianapolis. Around midnight, he heard a commotion near his home at the intersection of Talbott Street and Vermont Street and came to the aid of someone being robbed by individuals suspected of other armed robberies in the downtown area that night. *Id*. at ¶ 33. "In the course of

helping the robbery victim, Beaty was shot by one or more of the robbers." *Id*. Tragically, Beaty died of the gunshot wounds he sustained that night. *Id*.

On May 10, 2022, the Estate filed a two-count Complaint against the Defendants in this Court alleging a state law wrongful death claim and a due process claim. The Complaint alleges

> The Defendants' actions and failures to act resulted in a heightened state of violence and unprotected air of lawlessness throughout the downtown area. Failing to properly disperse the violent crowd and follow up with patrols throughout the residential downtown neighborhoods, were a proximate cause of the wrongful death of Mr. Beaty.

*Id*. ¶ 34. Count One alleges the Defendants' acts or omissions violated Mr. Beaty's Fourteenth Amendment rights, and Count Two is a state-law wrongful death claim. *Id*. at ¶¶ 35–42.

## II.     MOTION TO DISMISS STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

3

# III.     DISCUSSION

The Estate alleges that Beaty's death was the result of the Defendants' actions and inactions during a period of civil unrest in downtown Indianapolis. ([Filing No. 21](#).) [2] The Defendants argue the City cannot be held responsible for crimes committed by others and, as such, the Complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). ([Filing No. 15](#); [Filing No. 22](#).). In particular, Defendants argue dismissal is appropriate because the Estate failed to state a claim under the "state created danger" exception to the Due Process Clause and the wrongful death claim is barred by the Indiana Tort Claims Act. Alternatively, Defendants contend that they are immunized pursuant to common law immunity. The Court will discuss each argument in turn.

## A.     **Whether the Due Process Claim is Viable**

Count I alleges a violation of Beaty's due process rights in violation of § 1983 against all Defendants[3] under the "state created danger" exception. ([Filing No. 1](#); [Filing No. 21](#).)

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266 (1994). Under § 1983, the Estate must allege: (1) a deprivation of a right guaranteed by the Constitution or laws

---

[2] To the extent the Estate intended to state an equal protection claim, such a claim is waived because the Estate failed to respond to Defendants' equal protection arguments in its response ([Filing No. 1](#); [Filing No. 21](#)). *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (concluding that "failure to respond to an argument—as [is the case here]—results in waiver.").

[3] Suits may be brought against individual officers in either their official or individual capacity or both. Here, the Estate sues Mayor Joe Hogsett and Chief of Police Randal Taylor in both their individual and official capacities. The distinction is telling because where a suit is brought against an individual in their official capacity it is really a claim against the municipality, *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997), and thus, the Estate's claims against Joe Hogsett and Randal Taylor in their official capacities is another way of making a claim against the City. Although the Estate has not argued municipal liable under *Monell*, the claim against the City would have faltered on the absence of an "underlying constitutional violation" by the Defendants, which "automatically preclude[s] a finding of Monell liability." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 463 (7th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)).

of the United States, and (2) that a person acting under the color of state law caused the deprivation. *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 2. "[N]othing in the language of the Due Process Clause . . . requires the state to protect the life, liberty, and property of its citizens" against invasion by third parties. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). Courts, however, have read *DeShaney* as carving out two exceptions in which the state can be held liable for private violence. 489 U.S. 189, 195 (1989).

As relevant here, the Estate contends the "state created danger" exception applies. Under this exception the government violates an individual's due process rights when "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question 'shocks the conscience.'" *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019).

1. **<u>Created or Increased Danger</u>**

It undisputed that a private actor and, not someone acting under color of law, shot and killed Beaty. ([Filing No. 1 at ¶ 33](#).) The Court therefore must first determine whether IMPD created or increased the danger to Beaty.

To adequately plead a state created danger claim, the Estate must allege the government's affirmative acts placed Beaty in danger or increased the danger Beaty already faced. *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599–600 (7th Cir. 2008). Regardless of whether the act is characterized as an affirmative act or an omission, the dispositive factor is whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable. *Doe v. City of Marion*, 196 F.Supp.2d 750, 757 (N.D. Ind. 2002). Mere inaction by state officials,

even in the face of a known threat, is insufficient. *DeShaney*, 489 U.S. at 203; *Windle v. City of Marion*, 321 F.3d 658, 661–62 (7th Cir.2003); *Doe*, 196 F.Supp.2d at 756–57.

The Seventh Circuit has stressed that liability under the state created danger exception has only been found under "rare and often egregious" circumstances. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). Some examples include police officers arresting some children's uncle and leaving the children on the side of a dangerous highway late at night, *White v. Rochford*, 592 F.2d 381, 385 (7th Cir. 1979); police officers arresting a sober driver while leaving behind an obviously drunk passenger who subsequently took the wheel and was involved in collision was sufficient to state civil rights claim, *Reed v. Gardner*, 986 F.2d 1122, 1124 (7th Cir. 1993); or, officers revealing a police informant's identity to a criminal suspect who then goes on to kill the informant, *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998).

Here, the Estate has failed to state a claim that Defendants created or increased a danger to Beaty. In terms of any alleged "affirmative act," the Estate's allegations are that Beatty lived in downtown Indianapolis, IMPD mishandled its response to the protest and failed to "follow up with patrols around the residential neighborhoods of downtown Indianapolis following the protest to discourage any additional violence." (Filing No. 1 at ¶¶18–23, 27-34, 39.) The Estate argues,

> In our present case, Mr. Beaty was killed within hours of the Defendants leaving the scene of the riot and within a couple of blocks of Monument Circle. The danger created by the Defendants, in inciting a crowd then releasing that violent crowd into the neighborhoods surrounding Monument Circle, were so evident, and the danger of violent crime so foreseeable, that even though the victim may have seemed random, the Defendants must still be held accountable for his wrongful death.

(Filing No. 21 at 7).

The Court is not persuaded because the Complaint does not allege any affirmative act by the Defendants. As argued by the Defendants, the Estate does not allege that any Defendant, or any employee of the City or IMPD, was present at the scene of this act of violence against Mr.

Beaty, had any foreknowledge of this specific crime, had any previous interactions with the crime's perpetrators, or otherwise had any direct involvement in the incident whatsoever. ([Filing No. 15 at 2](#)). Moreover, the Estate does not allege that Beaty or the robbers were present at the protest, that IMPD advised the robbers of Beaty's location, or instructed Beaty to assist the robbery victim. The Complaint is devoid of facts that any Defendant acted to create or enhance a danger Beaty otherwise would not have faced. Unfortunately, while acting as a "good Samaritan," the danger for Beaty was created by Beaty and not by the Defendants. Accordingly, the Court concludes that the Estate has not alleged sufficient facts to support a finding that the Defendants, through any acts or omissions, created or increased the danger to Beaty.

    **2.** **<u>Proximate Cause</u>**

Even if the Estate's Complaint had sufficiently alleged any affirmative acts or omissions that created or increased the danger to Beaty, the Complaint must also allege facts suggesting that the Defendants' conduct was the proximate cause of Beaty's death; that is, Beaty "must have been a foreseeable victim" of the Defendants' acts. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009). The Estate argues proximate cause exists because the Complaint alleges Beaty was killed in a residential area within a few blocks of Monument Circle; the danger and violence due to rioting was highly foreseeable on May 30, 2020 because the same had occurred downtown just one night before, on May 29, 2020; and the Defendants had not changed their course of action from one day to the next. ([Filing No. 21 at 7](#)).

In *Buchanan-Moore*, the Seventh Circuit affirmed the district court's holding that the decedent was not a foreseeable victim of a mentally ill man who shot and killed the decedent shortly after being released from the jail. *Id*. at 826-28. There the court recognized that proximate cause "is a fact specific inquiry, involving a consideration of time, geography, range of potential

victims, and the nature of harm that occurred." *Id*. at 829. The court found that the decedent's risk was "shared by the thousands of others who lived in that section of town as well as those living in any community accessible to [the man] by foot, and perhaps even by public transit." *Id*. Such a generalized, "amorphous zone of danger is insufficient to trigger a state duty to protect." *Id*.; *see also Martinez v. State of California*, 444 U.S. 277, 285 (1980) ("Dangers to the public at large are insufficient for constitutional purposes."). Similarly, the danger was not of a limited duration—the offender's propensity for crime "existed without temporal boundaries." *Id.* at 829.

Here, the Complaint fails to allege any link between Defendants' alleged missteps and Beaty's death. Apart from the crime occurring in the same region of the City and around the time the protests ended, there is no factual allegation that supports a finding that the protests and Beaty's murder are connected—let alone that the crime was somehow caused by the Defendants. As addressed above, there are no allegations that Beaty or the armed robbers were present at the protests, that the robbers' actions were motivated by or prompted by the Defendants, or that either the robbers or Beaty had any contact with IMPD or the other Defendants. While the Estate alleges that Beaty was being robbed by individuals suspected of other armed robberies in the downtown area that night, this fact is an unsupported conclusion of fact. ([Filing No. 1 at ¶ 33.](Filing No. 1 at ¶ 33.)) The danger was unspecific to Beaty and, the facts clearly illustrate, the danger was shared by all in the vicinity of downtown Indianapolis. It is more foreseeable that someone could have been hurt at the protests than predicting the events that led to Beaty's death. The alleged risk is more akin to the "indefinite" risk articulated in *Buchanan-Moore*, and as pled, the unfortunate events appear more "unpredictable rather than legally foreseeable." *Buchanan-Moore*, 570 F.3d at 828. The Court therefore concludes that the Defendants' actions or inactions were not the proximate cause of Beaty's death.

8

### 3. **Shock the Conscience**

Finally, to be held liable under the state created danger exception, the government's actions must shock the conscience. The Supreme Court has held that state action that shocks the conscience is conduct which may be deemed "arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Only "the most egregious official conduct" will satisfy this stringent inquiry. *Id*. "Making a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson v. Indian Prairie Sch. Dist*. 204, 653 F.3d 647, 654-55 (7th Cir. 2011) (quoting *Cnty. of Sacramento*, 523 U.S. at 846). Rather, "[i]t requires a culpable state of mind equivalent to deliberate indifference." *Est. of Her*, 939 F.3d at 876 (citing *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007)).

The Estate argues the following allegations are enough to shock the conscience.

> Even though this was to be a peaceful demonstration protesting police brutality, the officers arrived in full riot gear and stood face to face and toe to toe with the protesters. (Dkt. 1, ¶ 21, 22). Officers were given little to no training and/or instruction on how to deal with a peaceful First Amendment protest and, as a result, began deploying CS gas and pepper balls into the crowd, even though most of the crowd was not engaged in criminal activity. (Dkt. 1, ¶23, 28). There was no Incident Action Plan in place and no curfew ordered for the weekend. (Dkt. 1, ¶ 27) Lastly, IMPD had no command center on scene to oversee the actions and inactions of their officers or the crowd. (Dkt. 1, ¶ 29).

([Filing No. 21 at 9](Filing No. 21 at 9)).

Defendants argue that the because the Complaint is devoid of allegations that Beaty or the men who killed him were impacted in any way by the "affirmative acts" of crowd control, that anyone involved in Beaty's murder was alleged to have been involved in the protests or riots, or that any Defendant knew of, and disregarded, a risk of harm to Beaty—the Estate's rejoinder argument misses the mark. ([Filing No. 22 at 11](Filing No. 22 at 11)). The Court agrees. Here, the alleged actions or

9

inactions by the Defendants do not amount to the level of culpability required under the state created danger exception. Construing the allegations in the Compliant in the light most favorable to the Estate, it demonstrates nothing more than mere negligence. The fact that IMPD could have done more does not mean that it acted with deliberate indifference. *See Slade v. Bd. of Sch. Dirs.*, 702 F.3d 1027, 1029 (7th Cir. 2012). While IMPD could have better prepared for the protests or patrolled the surrounding areas after the protests, "actions ... [that are] short-sighted, flawed, negligent, and tortious ... do not satisfy the standard for finding a constitutional violation." *Jackson*, 653 F.3d at 656 (citing *Cnty. of Sacramento*, 523 U.S. at 848). A standard of deliberate indifference cannot mean that the government has a duty to prevent all constitutional injuries in practice.

The Complaint fails as a matter of law because its allegations do not describe conscience-shocking misconduct by any of the Defendants. It is difficult to ignore Beaty's tragic death and the Court feels great empathy for the Estate, but the Constitution does not guarantee Beaty's safety from criminals. Absent some affirmative act by the IMPD, the Estate has no recourse under the Constitution and the Court dismisses Count I—the § 1983 claim.

**B.** <u>**The state law claim**</u>

As for the Estate's state law claim—Count II—against the Defendants, "[i]t is the well-established law of [the Seventh] circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Consequently, Count II of the Complaint is **dismissed**.[4]

---

[4] Given the Estate's timely federal suit, the relevant statutes of limitations for the state law claim should not be a problem. *See* 28 U.S.C. § 1367(d). The statutes of limitations applicable to the Estate's state law claim was tolled while the claim was pending in federal court and for at least thirty (30) days after dismissal. *Leggette v. Dr Pepper/Seven Up, Inc.*, 2022 WL 6750261, *1 (N.D. Ill. Oct. 11, 2022) (citing *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018)).

## IV. CONCLUSION

For the reasons explained above, the Defendants' Motion to Dismiss (Filing No. 14) is **GRANTED**[5]. Count I is **dismissed with prejudice**, and the state law claim, Count II, is **dismissed without prejudice**. A final judgment will enter in a separate entry.

**SO ORDERED**.

Date: 2/7/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Matthew Springer
BORINSTEIN SPRINGER, LLP
matt@borinsteinspringer.com

Rochelle Elaine Borinstein
BORINSTEIN SPRINGER, LLP
rborinst@aol.com

Matthew K. Giffin
City of Indianapolis
Office of Corporation Counsel
matt.giffin@indy.gov

---

[5] "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [her] complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) (*quoting Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015)). However, the Court need not grant leave to amend if "'it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.'" *Id.* at 347 (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). "An amendment is futile if the amended complaint would not survive a motion for summary judgment." *King ex rel. King v. E. St. Louis Sch. Dist.* 189, 496 F.3d 812, 819 (7th Cir. 2007).